UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WILLIAM F. GLACKEN,

                Plaintiff,

   -against-                                Civil Action No. 09-4832
                                              (DRH)(AKT)

THE INCORPORATED VILLAGE OF FREEPORT,
ANDREW HARDWICK, in his official capacity as
Mayor of the Incorporated Village of Freeport and
Individually, the BOARD OF TRUSTEES FOR THE
INCORPORATED VILLAGE OF FREEPORT,
HOWARD COLTON, individually and in his official
capacity as Village Attorney for the Incorporated
Village of Freeport, DENNIS WARREN, individually,
"JOHN DOE #1," "JOHN DOE #2," "JOHN DOE #3,"
"JANE DOE #1," "JANE DOE #2,"

                Defendants.
-------------------------------------------------------------------X

**APPEARANCES:**

**Law Offices of Edwards & Edwards**
Attorneys for Plaintiff
335 South Ocean Avenue
P.O. Box 191
Freeport, New York 11520
By:    Harrison J. Edwards, Esq.

**Jaspan Schlesinger LLP**
Attorneys for Defendant Incorporated Village of Freeport
300 Garden City Plaza
Garden City, New York 11530
By:    Stanley A. Camhi, Esq.
         Jessica M. Baquet, Esq.

**D'Amato & Lynch, LLP**
Attorneys for Defendants Andrew Hartwick and Howard Colton
70 Pine Street
New York, New York 10270
By:    Stephen F. Willig, Esq.

**HURLEY, Senior District Judge**:

Presently before the Court is the motion of defendants The Incorporated Village of Freeport ("Freeport"), Andrew Hardwick (Hartwick"), and Howard Colton ("Colton") (collectively "Defendants") to disqualify Harrison J. Edwards ("Edwards") and his firm, Edwards & Edwards, from representing plaintiff William F. Glacken ("Plaintiff" or "Glacken"). For the reasons set forth below, the motion is granted.

## Background

<u>The Instant Action</u>

Glacken is the former mayor of Freeport, having served in that position from 1997 to 2009. Edwards, who is Glacken's brother-in-law, was appointed in 1997 to serve as Village Attorney, a position he held until 2009 when Glacken lost his bid for re-election. Glacken, represented by Edwards, commenced the instant action challenging the decision of Freeport's Board of Trustee's to withdraw the defense and indemnification it initially authorized for Glacken pursuant to New York Public Officers Law § 18 with regard to a defamation lawsuit brought against him by Gary Melius ("Melius"). The complaint in the defamation action alleged that at a public meeting held in February 2009, Glacken had referred to Melius as an "extortionist." At the time of the alleged incident Glacken was running for re-election as mayor, an election he lost. Just days before his term of office was to expire, Freeport's Board voted to provide Glacken with a defense of the defamation action at Freeport's expense and to indemnify him in the event judgment was entered against him. That resolution was adopted in executive session of the Board with "Glacken, Trustees White, Miller, Martinez and Deputy Mayor/Trustee Frierson-Davis, the Village Treasurer, the Village Clerk and [Edwards] . . . all in attendance . . . ." (Edwards Aff. ¶ 15.) After Glacken's successor took office, the Board revisited its decision, concluding that Glacken was not

2

entitled to indemnification and defense as the alleged statements were not made within the scope of his duties of mayor but rather were made as he was campaigning for re-election.

The Water Works Actions

The defamation action is not the only lawsuit involving Melius and Glacken. Melius and his company, Water Works Realty Corp., also commenced two federal lawsuit against, inter alia, Glacken, Edwards and other Freeport officials. The federal actions involve allegations of a fraudulent scheme to deprive the plaintiffs therein of their rights in certain property referred to as the "Water Works property." The Board adopted a resolution authorizing Freeport to provide a defense for and indemnify Glacken, Edwards and other Freeport officials. Eventually Freeport entered into a stipulation of settlement for the Water Works action. However, Glacken, Edwards, and some of the other individual Freeport defendants refused to execute the settlement agreement on the grounds it contained a non-disparagement clause that would prohibit them from criticizing the settlement. Thereafter the Board voted to withdraw the defense and indemnification of Glacken, Edwards and the other non-settling defendants because of their failure to cooperate in the settlement of the Water Works actions.

Edwards' Representation of Glacken and Freeport

Edward's representation of Freeport was not limited to the twelve years from 1997 to 2009 when Glacken served as mayor. "During the 1980's" Edwards was the Village Attorney for Freeport under the "White and Storm administrations." (Edwards Aff. ¶ 4.) In 1987, Glacken became Village Attorney and Edwards became special counsel to Freeport's Community Development Agency and also represented Freeport on various litigations and development projects. (*See id.*)

As noted earlier, Glacken is Edwards' brother-in-law. According to Edwards, he has

3

"represented Mr. Glacken and members of his family on varied individual matters since 1977." (Edwards' Aff. ¶ 3.) The Court has not been provided information as to precisely when Edwards represented Glacken, as opposed to "members of [Glacken's] family."

## Discussion

### I. Defendants' Motion

Defendants offer three grounds for disqualification of Edwards and his firm. First, they argue that Edwards has a conflict of interest because there is a substantial relationship between Edwards' former representation of Freeport and the issues in this action. Second, they assert that Edwards is likely to be a necessary witness. Finally, they maintain that because he is a named defendant in the Waterworks action and Freeport has revoked his defense Edwards' personal financial interest will adversely affect his representation of Glacken.

### II. Motion to Disqualify: Legal Standards

In considering a motion to disqualify counsel, a court must "balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). Thus, although any doubt should be resolved in favor of disqualification, *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2009), motions to disqualify counsel are disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation. *See Evans v. Artek Systems Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983) (noting "high standard of proof" for disqualification motions because they are "often interposed for tactical reasons"); *accord Gov't of India*, 569 F.2d at 739.

The disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video*, 409 F.3d at 132 (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and is only appropriate where allowing the representation to continue would pose a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132. As of April 1st, 2009, the New York disciplinary rules are the Model Rules of Professional Conduct (the "Rules"), *see* 22 N.Y.C.R.R. §1200.0 et seq., which are essentially the same as the previously followed Model Code of Professional Responsibility (the "Code"). *See All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, 2010 WL 2243351, at *3 n.2 (E.D.N.Y. June 1, 2010) ("[T]he new rules still incorporate much of the substance of the old rules, and much of the precedent interpreting the old rules still remains applicable.") (internal quotations and citations omitted).

In a case of successive representation, i.e. where an attorney is in a position adverse to a former client, the attorney may be disqualified where

> (1) the moving party is a former client of the adverse party's counsel;
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (citing *Evans*, 715 F.2d at 791).

The substantial relationship test is grounded in the requirement that an attorney protect client confidences. Rule 1.6 states in part that "[a] lawyer shall not knowingly reveal confidential information . . . or use that information to the disadvantage of a client or for the advantage of the lawyer or a third person[.]" Rule 1.6(a). Counsel should be precluded from "us[ing] privileged information gained from a former client, to the advantage of a current client" because it would "disturb the balance of the presentations." *Leslie Dick Worldwide, Ltd. v. Soros*, 2009 WL 2190207, at * (S.D.N.Y. Jul. 22, 2009). The test is also grounded in a lawyer's duty of loyalty. *See, e.g., In re I Successor Corp.*, 321 B.R. 640, 649-50 (S.D.N.Y. 2005) (citing cases). Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

## II. The Motion is Granted

Here, there is no dispute that Freeport is a former client of Edwards and, as Edwards advised Freeport on whether to provide a defense and indemnity to Glacken in the defamation action, there is a substantial relationship between Edwards' representation of Freeport and the current action. Although generally considered to be a three part test, the third requirement is presumed if the first two prongs are met. *See Emil Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973); *see also Gov't of India,* 569 F.2d at 740 (courts should not require proof that an attorney actually had access to or received privileged information as it would present former client with a Hobson's choice).

Plaintiff maintains, however, that before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received

information which the client might reasonably have assumed the attorney would withhold from his present client citing *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977). *Allegaert* is not applicable in the present case. Its rule is limited to situations "where a partnership, joint venture or other cooperative effort breaks up or where two former co-parties to a litigation sue each other." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1458 n.7 (S.D.N.Y. 1985).

In *Allegaert*, appellant, the trustee in bankruptcy of a corporation, moved to disqualify appellees' counsel based on the law firms' prior representation of the corporation in another matter. Appellant's corporation had previously participated in a realignment agreement with appellees similar to a joint venture. The law firms sought to be disqualified were counsel for the appellees prior to and during the course of the realignment agreement. However, during the course of the realignment agreement, those same law firms also represented appellant's corporation on alleged substantially related matters. The Court of Appeals held that the substantial relationship test was inapposite because appellant's corporation "necessarily knew" that information given to the law firms sought to be disqualified would "certainly be conveyed to [appellees,] their primary clients[.]" 565 F.2d at 250. The court further stated that appellant's corporation could not have possibly thought that the law firms sought to be disqualified were representing the corporation without appellees' "knowledge and approval" or that "any information given to the law firms conceivably would have been held confidential from the primary clients of the firms." *Id*. The court emphasized that "integral" to its holding was the law firms' "continuous and unbroken legal relationship with [appellees,] their primary clients" and that this was not a situation where the attorneys sought to be disqualified had "changed sides from a former client to a current, adverse client." *Id*. at 251. The *Allegaert* court distinguished earlier

7

cases as follows:

> [T]he attorneys sought to be disqualified here have not changed sides from a former client to a current, adverse client. In [*Emle*, 478 F.2d 562 (2d Cir. 1973)] plaintiff's counsel had previously represented a part owner of the defendant corporation in substantially related litigation at a time when he was not plaintiff's counsel; in other words, he was changing from the defendant's side to the plaintiff's. We also found a switchover of representation in [*NCK Organization Ltd. v. Bregman*, 542F.2d 128 (2d Cir. 1976)]. There, house counsel to the plaintiff corporation became personal counsel to the president after both had been terminated. The former house counsel represented the former president in a suit against the corporation on an employment contract which house counsel had prepared for his corporation. And in [*Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975)] a former attorney of Celanese Corporation who had participated in the defense of a Title VII suit switched sides to become an additional client of the plaintiff's attorney in the very same litigation. . . . Emle, Hull and NCK do not control this disqualification motion because at all times [defendants' attorneys] represented [the same] interests.

565 F.2d at 251.

Here, Glacken's attorney has switched sides. In his capacity as Village Attorney, Edwards represented the Village of Freeport as distinct from Glacken its mayor. (*See* Rule 1.13.) To the extent Edwards may have represented Glacken during this period, that representation related to "individual" matters as opposed to matters related to Freeport. In advising Freeport as to the propriety of providing Glacken with a defense and indemnification in the Defamation action, Edwards's duty of loyalty and confidence lay with the Village of Freeport, not Glacken.

Plaintiff's argument that the Board of Trustess had no expectation that confidences imparted to Edwards would be withheld from Glacken, (Pl.'s Mem. in Opp. at 5-6), is underwhelming. Indeed, such an argument was rejected in *NCK*. To paraphrase the *NCK* court, "[t]he confidential nature of the information to which [Edwards] had access in his fiduciary capacity as [village attorney] is not dependent upon whether it was secret from or known to

8

[Glacken] as a [village] officer." 542 F.2d at 133. *See also Successor Corp.*, 321 B.R. at 656 ("To extend the *Allegaert* exception to allow former counsel of a corporation to represent an officer or director against the corporation concerning matters on which the firm worked misunderstands the reasoning of the *Allegaert* decision."). Defendants having established the requirements of the substantial relationship test, the disqualification of Edwards and his firm[1] is appropriate and it is unnecessary to address the other asserted bases for disqualification.

## Conclusion

For the reasons set forth herein, Defendants' motion to disqualify Plaintiff's counsel is granted. This matter is hereby stayed for thirty (30) days to allow Glacken to retain new counsel.

Dated: Central Islip, New York
   October 6, 2010

                  /s/
                  Denis R. Hurley
                  Senior District Judge

---

[1] The Second Circuit has made clear that "[a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video*, 409 F.3d at 133. This presumption may be rebutted in some cases where the firm has instituted "practices and structures ... sufficient to avoid disqualifying taint," *id*. at 137 including "the intentional construction of a 'Chinese Wall,' or [other] de facto separation that effectively protects against any sharing of confidential information." *Id*. at 138. In this case, however, no attempt has been made to rebut the presumption.