```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WILLIAM F. GLACKEN,

                            Plaintiff,

            -against-                                        MEMORANDUM & ORDER
                                                             09 CV 4832 (DRH)(AKT)

THE INCORPORATED VILLAGE OF FREEPORT;
ANDREW HARDWICK, in his official capacity as
Mayor of the Incorporated Village of Freeport and
Individually; the BOARD OF TRUSTEES FOR
THE INCORPORATED VILLAGE OF FREEPORT;
HOWARD COLTON, individually and in his official
capacity as Village Attorney for the Incorporated
Village of Freeport; DENNIS WARREN, individually;
JOHN DOE #1; JOHN DOE #2; JOHN DOE #3;
JANE DOE #1; and JANE DOE #2,

                            Defendants
----------------------------------------------------------X
```

**APPEARANCES:**

**William F. Glacken**
Plaintiff *pro se*
152 North Long Beach Avenue
Freeport, New York 11520

**L'Abbate, Balkan, Colavita & Contini, LLP**
Attorneys for Defendant Dennis Warren
1001 Franklin Avenue
Garden City, New York 11530
By: Peter L. Contini

**HURLEY, Senior District Judge:**

      Before the Court is defendant Dennis Warren's ("Warren") motion to dismiss plaintiff's

civil rights claims against him pursuant to Fed. R. Civ. P. 12(b)(6). All other defendants in this

1

action are represented by separate counsel and have answered the complaint. For the reasons that follow, Warren's motion is granted in part, and denied in part.

## BACKGROUND

Plaintiff, William F. Glacken ("Glacken" or "plaintiff"), the former mayor of the Village of Freeport, New York ("Freeport" or the "Village"), brings this civil rights claim pursuant to 42 U.S.C. § 1983, alleging that defendants violated his First, Fifth, and Fourteenth Amendment rights, and that defendants conspired to violate those rights. Plaintiff also alleges violations of section 18 of the Public Officers Law of the State of New York and section 130-5 of the Code of the Village of Freeport.

Plaintiff's case arises out of the Village's decision in 2009 to withdraw funding for his defense and indemnification in three *other* lawsuits brought against him while he was mayor. The first two suits were filed in response to various efforts undertaken by the Village in 2004, during his tenure as mayor,[1] to liquidate approximately $1.2 million in assets held by Water Works Realty LLC ("Water Works") in order to cover tax liens owed to the Village. (Complaint ("Compl.") ¶ 21.) Four years after those efforts began, in October of 2008, Water Works filed two complaints in Nassau County Supreme Court against, *inter alia*, Nassau County, the Village of Freeport, Glacken, and various employees of the Village for damages arising out of the tax liquidation. (Compl. ¶¶ 19, 21.) These two actions (referred to hereinafter as the "Water Works suits") alleged, among other things, fraud, conspiracy, and violations of federal civil RICO

---

[1] Plaintiff served as the mayor of Freeport between 1997 and 2009. (Compl. ¶5.)

statutes, (compl. ¶ 21), and were later removed to this District where they are currently pending. Shortly after the two suits were commenced, the Board of Trustees of the Village (the "Board") voted to retain the legal services of Wilson, Elser, Moskowitz, Edelman, & Dicker LLP ("Wilson Elser") to represent the Village and its individual employee defendants in the actions, including Glacken.[2] (Compl. ¶¶ 22-24.)

Around this same time, defendant Andrew Hardwick ("Hardwick") began his campaign to unseat Glacken as mayor of Freeport in the March 2009 election. Among those involved in his campaign were defendants Howard Colton ("Colton") and Dennis Warren. Glacken alleges that these three individuals "formed an alliance with the plaintiffs in the Water Works actions," namely, Gary Melius ("Melius") and Water Works LLC, to "fund Hardwick's mayoral election campaign, coordinate attacks on Glacken, and create a vehicle to settle the Water Works actions and various tax certiorari proceedings" in a manner that favored Water Works. (Compl. ¶¶ 33, 34.) In furtherance of that endeavor, Melius, the "principal" of Water Works, and members of his family made "substantial contributions" to Hardwick's mayoral campaign. (Compl. ¶¶36, 37.) The Water Works actions were allegedly a notable campaign issue, occupying the subject of campaign mailings "circulated" by Melius that "excoriate[ed]" plaintiff and other Village officials for their part in the two suits. (Compl. ¶¶ 41-42.)

Five days before the mayoral election, on March 13, 2009, Melius filed the third suit giving rise to the present action: a defamation claim against Glacken regarding statements he made during a public meeting at the Freeport Library a month earlier on the subject of the Water

---

[2] The Board voted to defend and indemnify Glacken pursuant to section 18 of the New York Public Officers Law, the statute under which Glacken brings his state-law claims. (*See* Compl. ¶ 1.)

Works suits. (Compl. ¶ 40.) The Village voted to defend and indemnify Glacken in this third action as well. (Compl. ¶ 45.)

Defendant Hardwick defeated Glacken in the March 18, 2009 election and became mayor of Freeport. (Compl. ¶¶ 47-48.) After the election, but prior to taking office on April 6, 2009, defendants Colton and Warren, and unspecified "others," allegedly met with the Water Works plaintiffs and "formed a plan to promptly settle the Water Works actions on terms favorable [to Water Works]," and to take "measures to stifle Glacken's opposition to the settlement." (Compl. ¶ 49.) During this same period, defendants Hardwick, Colton, and Warren "ordered" the Village's claims administrator to terminate Wilson Elser as attorneys for the Village in the Water Works actions and replace them with Warren's own law firm. (Compl. ¶¶ 50, 54.) In the meantime, Wilson Elser remained as counsel to the individual Freeport defendants in those suits, including Glacken.[3] (Compl. ¶ 57.) The day Hardwick took office, he appointed Colton as the Village attorney. (Compl. ¶ 51.)

In May or June of 2009, Hardwick "instructed [] Warren to settle the Water Works [suits] as against Freeport only" for $3.5 million. (Compl. ¶ 58.) Warren then allegedly "threatened" the individual employee defendants by suggesting that the Village would withdraw funding for their legal defense unless they too joined in the settlement. (Compl. ¶ 59.) Glacken refused to settle, citing a number of reasons why he felt settlement was not in the best interest of the Village, and objecting to the confidentiality provision that would prevent him from speaking out about the propriety of the settlement. (Compl. ¶ 60.) Glacken alleges that he "published" his

---

[3] The one exception to this is Colton, who retained Warren's firm to represent him in the Water Works actions. (Compl. ¶ 55.)

4

opposition to the settlement by circulating a letter on September 3, 2009 to Hardwick, each member of the Village's Board of Trustees, the Village Clerk, and the Village Attorney. (Compl. ¶ 61.) His primary issue with the settlement was that it was premature, as no discovery had yet been conducted. (Compl. ¶ 61.)

In response, Hardwick, Colton, and Warren all "took steps" to have the funding of Glacken's representation in the defamation suit withdrawn. (Compl. ¶ 63.) Specifically, Colton and Warren both "knowingly and intentionally misinformed the Board of Trustees that payments to Wilson Elser on behalf of Glacken were illegal and possibly criminal, and that any Trustee who voted against the termination resolution would be personally liable for said legal fees." (Compl. ¶ 66.) By allegedly misrepresenting information to the Board, Colton and Warren "refused and/or ignored existing law requiring the Board's obligation and duty to defend Glacken pursuant to [New York] Public Officers Law §18." (Compl. ¶ 67.) The Board passed a resolution on September 14, 2009 discontinuing Glacken's defense and indemnification in the defamation suit, and authorizing Colton and/or Warren to "commence proceedings against [] Glacken to recover all Village funds expended by Freeport 'on the matter.'" (Compl. ¶ 65.)

Glacken alleges that defendants' conduct was "retaliatory" and "taken solely because of [his] publicly expressed opposition to Defendant Hardwick's proposed $3.5 million [ ] payment to Melius in settlement of the [Water Works actions], a significant matter of public concern." (Compl. ¶ 70.) He claims these acts violated his free speech, equal protection and due process rights, and the benefits afforded him as mayor of the Village under New York Public Officers Law §18(3)-(4). (Compl. ¶¶ 81-87, 91-92.) He also claims that the defendants conspired to violate such rights. (Compl. ¶ 101-02.)

5

## DISCUSSION

**I.  LEGAL STANDARD -** Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

6

allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (*quoting and citing Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT CLAIMS

Plaintiff claims that Warren, and the other defendants, violated the takings clause of the Fifth Amendment (compl. ¶¶ 104-06), his procedural due process rights under the Fourteenth Amendment (compl. ¶¶ 116-21), and his equal protection rights under the Fourteenth

7

Amendment (compl. ¶¶ 91-92).[4] As will be discussed below, these claims fail as a matter of law because plaintiff fails to allege sufficient facts to show that Warren engaged in state action.

In order to maintain claim under 42 U.S.C. §1983 ("§1983"), "a plaintiff must establish a deprivation of constitutional rights 'under color of law.'" *Faraldo v. Kessler*, 2008 U.S. Dist. LEXIS 5367, 2008 WL 216608, at *3 (E.D.N.Y. Jan. 23, 2008)(quoting *Briscoe v. LaHue*, 460 U.S. 325, 329-30(1983)).[5] Thus, "Section 1983 liability may only be imposed upon wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Id.* (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)); *see also R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 445 (S.D.N.Y. 2003) ("Perhaps most importantly, excluded from the reach of Section 1983 is private conduct 'however discriminatory or wrongful.'") (quoting *Elmasri v. England*, 111 F. Supp. 2d 212, 217 (E.D.N.Y. 2000)).

Warren argues that he is not liable under §1983 because at no point during the alleged events was he acting under color of state law. He asserts in his motion papers that he never held an "official position" with the municipality, nor did he ever act "under the power and authority of a governmental body." (Memorandum of Law in Support of Defendant Dennis Warren's Motion to Dismiss ("D's Memo") at 5-6.) At most, Warren argues, he provided "advice" to the Village. (*Id.* at 12.)

---

[4] Although plaintiff does not list violations of the equal protection clause as one of the six causes of action in his complaint, he nevertheless asserts such claims elsewhere in the pleading. (*See* compl. ¶¶ 91-92.)

[5] "[I]t is clear that in a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982).

Plaintiff contends that although Warren never held an official position with the Village, he was nevertheless acting under color of state law during the relevant period because he was a "willful participant in joint action with the State." (*See* Plaintiff's Memorandum of Law in Opposition to Defendant Dennis Warren's Motion to Dismiss ("P's Opp.") at 7-8 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980))). However, plaintiff's citation here, and the cases to which the *Dennis* case itself cites, relate to situations where a private party conspired with a state actor to deprive an individual of his or her federally protected rights. These cases do not involve the liability of a private actor for substantive violations of such rights. *See Dennis*, 449 U.S. at 28 n.4 ("[A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983.")(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)(analyzing the plaintiff's conspiracy count); *see also Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 315 (2d Cir. 2007); and *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).[6]

Warren, however, may be found liable under the substantive §1983 claims if he has "taken the decisive step that caused the harm to the plaintiff" and the state actors named here were "sufficiently involved to treat that decisive conduct as state action." *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988). Warren, a nominally private actor, may be considered a state actor for present purposes where he meets one of the following three tests:

---

[6] Plaintiff's arguments under the *Dennis* or *Adickes* line of cases will be discussed *infra* in the section bearing the heading "Plaintiff's Conspiracy Claims."

> 1. The "compulsion test:" "the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state," 2. The "public function test:" "the entity 'has been delegated a public function by the [s]tate,'" or, 3. The "joint action test" or "close nexus test:" "the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are 'entwined' with state policies." [*Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. N.Y. 2008)] . . . (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)) . . . .

*Den Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010)(per curiam).

The facts alleged in the complaint demonstrate that each of the three asserted violations of Glacken's Fifth and Fourteenth Amendment rights was caused by a single event: the Village's withdrawal of Glacken's defense and indemnification in the defamation suit. That result was authorized solely through a resolution passed by the Village's Board of Trustees on September 14, 2009. The complaint does not identify any other entity or individual that did or could discontinue underwriting Glacken's representation.

Warren's only connection to the Village's decision to rescind funding of Glacken's defense came in the form of his testimony before the Board of Trustees in which he, along with Colton, "knowingly and intentionally misinformed the Board of Trustees" as to the legality of funding Glacken's defense and indemnity. (Compl. ¶ 66.) That resolution was passed "only after" Warren and Colton gave their purportedly false testimony to the Board. At that time, Colton had been appointed Village Attorney and Warren had been retained to represent the Village in the Water Works suits.

As an initial matter, the fact that the Village retained Warren, a private attorney, to

10

represent it in the Water Works suits, alone, is not enough to confer state action upon him. *See Watson v. Grady*, No. 09-CV-3055, 2010 U.S. Dist. LEXIS 103473 at *26 (S.D.N.Y. Sept. 30, 2010)(failing to find state action merely because the defendant, a private attorney, was retained by the City of Poughkeepsie School District)(citing *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 319 (S.D.N.Y. 2008)("[A] private attorney representing a client in either a civil or criminal action is not a state actor for purposes of § 1983.")); *cf. Polk County v. Dodson,* 454 U.S. 312, 325 (1981)(public defenders in a criminal case are not state actors under §1983).

Moreover, Warren's role as special counsel to the Village in the Water Works actions is irrelevant for present purposes because the complaint does not allege that he appeared before the Board in that capacity. *See Brentwood*, 531 U.S. at 295 (requiring a "close nexus between the State and the challenged action"). The complaint also fails to allege that Warren, an otherwise private party, was "coerced" or "controlled" by the Village to appear before the Board, or that he did so with a "badge of authority" from the municipality. Although it is alleged that Hardwick and Colton (both state actors in their own right) also ventured these arguments to the Board, there is no allegation that Warren himself did anything more than assert a similar, if not identical, position.[7] To the extent that the complaint attempts to mark Warren as a state actor with regard to his testimony at all, it does so with much broader strokes, labeling Warren, for instance, as a "political operative" of Hardwick's. (Compl. ¶¶ 15, 35.) These unspecified terms do not provide a sufficient factual basis to hold Warren liable as a state actor under plaintiff's substantive Fifth and Fourteenth Amendment claims.

---

[7] This conclusion is made solely in the context of the substantive claims against Warren, not in the context of the conspiracy claims discussed below.

Furthermore, the complaint does not allege that Warren's testimony was in any way binding on the Board of Trustees. As Warren points out in his motion, the mere fact that he provided advice and counsel to the Village does not make him a state actor under §1983. (D's Mot. at 12 (citing *R-Goshen*, 289 F. Supp. 2d at 445).) District courts within this Circuit have routinely held that where private actors merely provide consultation or advice to a municipality, they do not engage in state action for purposes of section 1983. *See Stepien v. Schaubert*, 2010 U.S. Dist. LEXIS 45893, 2010 WL 1875763, at *5 (W.D.N.Y. Feb. 23, 2010)("Generally, a consultant's professional opinions and the advice he offers to municipalities are not state action and thus cannot support claims against such consultant[ ] for liability under section 1983."); *R-Goshen*, 289 F. Supp. 2d at 445 ("A consultant's professional opinions and the advice he offers to municipalities are not state action and thus cannot support claims against such consultants for liability under section 1983."); *Omnipoint Communs. v. Comi*, 233 F. Supp. 2d 388, 395 (N.D.N.Y 2002)("Where a private actor merely provides professional advice, such advice cannot be considered state action for purposes of section 1983.").

Therefore, because plaintiff has failed to allege sufficient facts to demonstrate that Warren was acting under color of state law with regard to Glacken's substantive counts under the Fifth and Fourteenth Amendment rights, Warren's motion to dismiss these claims are granted.

## III. PLAINTIFF'S FIRST AMENDMENT CLAIMS

Glacken's First Amendment claim against Warren arises from events related to the Water Works suits in which Warren represents the Village – a different set of events than those that

gave rise to the Fifth and Fourteenth Amendment claims discussed *supra*.[8] The state action analysis in Section II above is therefore irrelevant to Glacken's First Amendment claim against Warren. However, the Court need not reach the matter of state action with regard to this alleged violation, as plaintiff fails to state a claim that Warren violated his First Amendment rights, regardless of whether Warren was acting under color of state law.

The events leading to the First Amendment claims against Warren occurred in August or September of 2009. During that period, Warren "threatened to remove the defense of Glacken … in the Water Works [suits]" unless he signed onto the settlement in that action and gave up his right to speak out against the settlement.[9] (Compl. ¶ 59.) Plaintiff alleges that these threats, as well as other acts by defendants, were "retaliatory" and served to "chill Plaintiff's continuing exercise of his First Amendment right of freedom of expression on matters of public concern and interest." (Compl. ¶¶ 90, 93- 96.) Among these matters of public concern are "the allegations in the Water Works complaints," which "have caused a great controversy in the Freeport community." (Compl. ¶ 29.)

To bring a claim of retaliation under the First Amendment, plaintiff must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled

---

[8] To the extent Glacken also claims that Warren violated his First Amendment rights through his allegedly false testimony before the Board, such claims are dismissed for the same reasons as the Fifth and Fourteenth Amendment claims, *viz.*, the complaint fails to allege Warren was acting under color of state law therein.

[9] The discussion here will not address the allegations in the complaint that Warren made similar threats to the other individuals named in that action, including members of the Board of Trustees. (*See, e.g.,* compl. ¶¶ 71-77.) These individuals are not parties to this action and plaintiff lacks standing to assert claims on their behalf.

the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010)(*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

We can assume for present purposes that plaintiff has sufficiently pled the first two elements with regard to Warren's alleged threats. Plaintiff identifies an interest protected by the First Amendment, *viz.*, the right to speak out about the Water Works litigation, a matter of public concern, which, according to the complaint, became a significant issue during the campaign for mayor in 2009. (*See* Compl. ¶ 32.) Second, plaintiff alleges that Warren was motivated to act as a result of his exercise of that right. (*See, e.g.*, compl. ¶ 49 ("[D]efendants' plan included measures to stifle Glacken's opposition to the settlement.".)

Nevertheless, plaintiff's retaliatory claim against Warren falters on the third element. To plead this prong of his claim, plaintiff must allege that "official conduct actually deprived [him] of that right." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008)(citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)). In other words, here, Glacken must allege that Warren's threats "silenced him or . . . had some actual, non-speculative chilling effect on his speech." *Id.* (internal quotes and citations omitted). The complaint fails to allege any such facts.

By way of example, the alleged threats by Warren occurred at some point between August 1 and September 24, 2009. (Compl. ¶ 59.) The complaint states that plaintiff "published" his objections to the terms of settlement by letter, on September 3, 2009 (compl. ¶ 61), suggesting that some of his public opposition to the matter could actually have been made *after* Warren threatened him. In any event, although plaintiff alleges in a conclusory fashion that the threats, and other acts, "cast a chill" and "inhibit[ed]" his right to "comment and oppose defendants' actions," (compl. ¶¶ 90, 93, 96), he does not allege that he actually stopped or curbed

14

his opposition to the matter. Furthermore, according to the complaint, he has still not chosen to join in the settlement, and remains a defendant in the Water Works suits.[10] Although in specific and "limited contexts," other forms of injury may be alleged in place of an "actual chilling" of one's speech, *see*, *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011)(collecting cases), plaintiff has not alleged such harm here. As discussed above, plaintiff clearly alleges that he suffered other forms of injury through the defendants' withdrawal of his defense and indemnification in the defamation suit. However, with regard to Warren's alleged *threat* that such a withdrawal would occur, plaintiff only alleges a chilling of his right to speak out.

Plaintiff also appears to bring a First Amendment claim for the denial of his right to access the courts. (*See* compl. ¶ 109.) However, this branch of his First Amendment claim relates to the loss of legal representation in the defamation suit (see discussion *supra*), not to Warren's threats that such his representation will be discontinued in the Water Works suits.

Accordingly, plaintiff fails to allege that Warren violated his First Amendment rights, and the motion to dismiss that claim as against Warren is granted.

## IV. PLAINTIFF'S CONSPIRACY CLAIMS

Plaintiff's conspiracy count alleges that Warren conspired with Hardwick and Colton to (1) present a "false statement" to the Board of Trustees regarding "the Village's duty to defend" Glacken, and regarding the Board members' individual liability for providing for such a defense, (2) to "present a false set of minutes concerning the Board's actions at its meeting of September

---

[10] Glacken mentions in his opposition memorandum that his representation by Wilson Elser in the Water Works suits at Village expense was "discontinued." (P's Opp. at 4.) None of this, however, is actually alleged in the complaint and will therefore not be considered here.

14, 2009," and (3) to provide the Village's claims administrator with a false "Corrected Directive" regarding that meeting. (Compl. ¶ 101.)

To allege conspiracy under §1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 2009); *accord Dennis*, 449 U.S. at 27-28.

Plaintiff alleges that two meetings occurred between Warren and his co-conspirators in which an agreement to violate his rights was allegedly made. The first was held in March 2009 prior to the election. Therein, "an alliance" was formed to, *inter alia*, "coordinate attacks on Glacken," and "promptly settle the Water Works litigation on terms favorable to the plaintiffs in that action in the event Hardwick won the Freeport mayoral election." (Compl. ¶¶ 33-34.) However, because neither Colton nor Hardwick were state actors at the time this "alliance" was formed, the first meeting did not result in an agreement "between two or more state actors or between a state actor and a private entity." *See Pangburn*, 200 F.3d at 71.

A second meeting was held between March 16 and April 5, 2009 during which Warren, Colton and "others" met with Water Works and again "formed a plan to promptly settle the Water Works actions on terms favorable to the plaintiffs in said actions." (Compl. ¶ 49.) But Colton did not become Village attorney until April 6, 2009 (compl. ¶ 51), and was therefore not a state actor during the second meeting either.

Nevertheless, while the alleged facts show that an agreement between these individuals was initially formed *prior* to Hardwick and Colton's status as state actors, plaintiff's conspiracy claim is not necessarily foreclosed. The meeting of the minds here occurred in close temporal

16

proximity to their becoming state actors and in close proximity to the subsequent acts made in furtherance of the conspiracy. In terms of the second meeting, this intervening period lasted for just days. It is therefore plausible that although the genesis of the plan occurred before Hardwick took office, this meeting of the minds persisted into the period in which Hardwick and Colton became Village officials.

Warren contends that the allegations of an agreement between the purported conspirators are "entirely vague and conclusory," and that "merely stating that two parties conspired together does not meet the standard sufficient to withstand a motion to dismiss." (D's Mot. at 8.) However, the complaint does more than merely allege in vague terms that an agreement and "alliance" was formed; it undergirds these allegations with a factual backdrop that explains both the motivation and occasion for such a conspiracy. Taking the allegations as true for present purposes, we see that Hardwick wanted to defeat Glacken in the mayoral race, and that Glacken was Hardwick's opponent. Likewise, Melius and Water Works wanted the Village to settle the pending suits in their favor, and Glacken regularly spoke out against them for bringing those suits. The goals of Hardwick and Water Works therefore dovetailed, and as a result, Water Works offered to fund Hardwick's campaign. Among these players is Warren, who plaintiff identifies as Hardwick's "political operative," who worked alongside Hardwick to get him elected and who shared the same goals with the others in the alleged conspiracy. Taken together, these alleged facts provide support for a facially plausible assertion that these individuals entered into the predicate agreement to a conspiracy claim.

The conspirators' plan is alleged to have included "measures to stifle Glacken's opposition to the settlement," which supports the second element of plaintiff's conspiracy claim.

17

Finally, Warren also allegedly committed acts in furtherance of the conspiracy, namely, "knowingly and intentionally" giving misleading testimony to the Board and threatening to have Glacken's legal defense in the Water Works discontinued if he decides not to join in the settlement, satisfying the final element of the conspiracy claim.

Plaintiff has therefore alleged sufficient facts in support of his conspiracy claims against Warren. Warren's motion to dismiss those claims is thus denied.

### V. STATE LAW CLAIMS

Lastly, Glacken claims violations of section 18 of the Public Officers Law of the State of New York ("Section 18"). Section 18 requires any public entity who has adopted its provisions through the passage of local law, to provide for "the defense of the employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties." Public Officers Law §18(3)(a). The law also requires indemnification of the employee against any judgment resulting from such an action. Public Officers Law §18(4). The Village agreed to confer the benefits of Section 18 on its officers and employees on February 8, 1982. *See* Section 130-15 of the Code of the Village of Freeport.

Although the complaint makes reference to Section 18 throughout the complaint, it is not listed as one of his causes of action, nor is it mentioned in Glacken's opposition papers. Nevertheless, to the extent that plaintiff actually asserts such a claim against Warren, which he does not appear to do, such a claim is dismissed as the subject statute compels action by the Village, not any individuals.

## CONCLUSION

Defendant Warren's motion to dismiss is granted in part and denied in part. Plaintiff's claims against Warren for violations of the First, Fifth, and Fourteenth Amendments, and for violations of state law are dismissed. Plaintiff's conspiracy claims against Warren may proceed.

**SO ORDERED.**

Dated: Central Islip, New York
       March 15, 2012

                                              /s
                                        Denis R. Hurley
                                        Senior District Judge