UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM F. GLACKEN,

                        Plaintiff,

              -against-

THE INCORPORATED VILLAGE OF FREEPORT,
ANDREW HARDWICK, in his official capacity as
Mayor of the Incorporated Village of Freeport and
individually, the BOARD OF TRUSTEES FOR
THE INCORPORATED VILLAGE OF FREEPORT,
HOWARD COLTON, individually and in his official
capacity as Village Attorney for the Incorporated
Village of Freeport, DENNIS WARREN, individually,
"JOHN DOE #1," "JOHN DOE #2," "JOHN DOE #3,"
"JANE DOE #1," and "JANE DOE #2,"

                     Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER
09 CV 4832 (DRH)(AKT)**

**APPEARANCES:**

**Jonathan Lovett, Esq.**
Attorney for Plaintiff William F. Glacken
305 Old Tarrytown Road, 2nd Floor
White Plains, New York 10603

**L'Abbate, Balkan, Colavita & Contini, LLP**
Attorneys for Defendant Dennis Warren
1001 Franklin Avenue
Garden City, New York 11530
By: Peter L. Contini, Esq.

**D'Amato & Lynch, LLP**
Attorneys for Defendants
Andrew Hardwick and Howard Colton
Two World Financial Center
New York, New York 10281
By: Stephen F. Willig, Esq.

**Jaspan Schlesinger LLP**
Attorneys for Defendant
Incorporated Village of Freeport
300 Garden City Plaza
Garden City, New York 11530
By: Stanley A. Camhi, Esq.
    Jessica M. Baquet, Esq.

**HURLEY, Senior District Judge:**

Plaintiff, William F. Glacken ("Glacken" or "Plaintiff"), brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants, the Incorporated Village of Freeport ("Village"), Andrew Hardwick ("Hardwick"), in his official capacity as Mayor of the Village and individually, the Board of Trustees for the Village ("Board"), Howard Colton ("Colton"), individually and in his official capacity as Village Attorney, Dennis Warren ("Warren"), individually, John Doe #1, John Doe #2, John Doe #3, Jane Doe #1, and Jane Doe #2, violated his First, Fifth, and Fourteenth Amendment rights, and that Warren, Hardwick and Colton conspired to violate those rights.

Presently before the court are Hardwick's and Colton's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, directed as to all causes of action in the complaint, i.e., the first cause of action alleging a conspiracy, second cause of action alleging a substantive due process violation, third cause of action alleging a First Amendment violation, fourth cause of action seeking injunctive and declaratory relief, fifth cause of action alleging a procedural due process violation, and sixth cause of action seeking legal fees; the Village's motion for summary judgment pursuant to Rule 56 seeking dismissal of the second cause of action alleging a substantive due process violation, third cause of action alleging a First Amendment violation, fourth cause of action seeking injunctive and declaratory relief, fifth cause of action alleging a procedural due process violation, and sixth cause of action seeking legal fees; and Warren's motion for summary judgment pursuant to Rule 56, directed as to the first cause of action alleging a

conspiracy.[1]  For the reasons set forth below, the motions by the Village and by Hardwick and Colton are granted in part and denied in part, and Warren's motion is granted.

## *BACKGROUND*

The material facts, drawn from the Complaint and the parties' Local Civil Rule 56.1 Statements, are undisputed unless otherwise noted.

Plaintiff served as Mayor of the Village from April 1997 through April 2009.  In 2009, Plaintiff ran for re-election.  Hardwick was Plaintiff's opponent in the mayoral election.  In February 2009, Plaintiff attended a Candidates Forum at the Freeport Public Library which was sponsored by the Northwest Civic Association.  Plaintiff was invited to attend the Candidates Forum because he was running for re-election, and the invitation was sent to his campaign committee.  Plaintiff would not have been invited to attend the forum had he not been a mayoral candidate, and he had not been invited to similar events by the Northwest Civic Association during the years he was not campaigning.  Hardwick was also invited to attend the Candidates Forum. Plaintiff and Hardwick both attended the Candidates Forum on February 26, 2009.  While the Village, Hardwick, Colton and Warren (collectively, "Defendants") argue that Plaintiff attended the Candidates Forum as part of his re-election campaign, Plaintiff argues that he attended the forum in his capacity as Mayor of the Village.

At the Candidates Forum, a moderator asked the candidates questions that had been

---

[1] The Village, Hardwick and Colton answered the Complaint.  Warren, on the other hand, moved to dismiss the Complaint as against him pursuant to Rule 12(b)(6).  In its March 15, 2012 Memorandum and Order, the Court dismissed Plaintiff's claims against Warren for violations of the First, Fifth, and Fourteenth Amendments, and violations of state law, but did not dismiss Plaintiff's conspiracy claim against Warren. *See Glacken v. Inc. Vill. of Freeport*, 2012 WL 894412, at *10 (E.D.N.Y. March 15, 2012).

proposed by members of the public who were in attendance. One such question involved lawsuits that had been brought by the Water Works Realty Corp. and Gary Melius ("Melius") against the Village and several of its officials (the "Water Works Actions"), and inquired about the impact of the Water Works Actions on the Village and its residents. The question was asked to both Plaintiff and Hardwick. Defendants assert that in response to the question, Plaintiff commented that Melius was an extortionist.

On March 13, 2009, Melius brought a lawsuit against Plaintiff in the Supreme Court of New York in Nassau County (the "Defamation Action"), alleging that Plaintiff made a defamatory remark about him at the Candidates Forum.[2] Plaintiff asked the Board to provide him with a defense and indemnification in the Defamation Action pursuant to New York Public Officers Law § 18 and Village Code § 130-6. Public Officers Law § 18 and Village Code § 130-6 both provide that the Village will provide an employee who is sued with a defense and indemnification so long as the acts or omissions at issue in the lawsuit occurred while the employee was acting within the scope of his public employment or duties.

Plaintiff lost the mayoral election to Hardwick on March 18, 2009; however, on March 30, 2009, prior to the end of Plaintiff's term as Mayor, the Board voted to provide Plaintiff with a defense and indemnification in the Defamation Action. The Board issued a Directive the next day to that effect. At the time of the Board's March 30, 2009 vote, the Village Attorney advising the Board was Harrison J. Edwards, Plaintiff's brother-in-law, and the Board consisted of Plaintiff, former Deputy Mayor Renaire Frierson-Davis, former Trustee Donald K. Miller, Trustee William

---

[2] The Defamation Action was dismissed in 2012. *See Melius v. Glacken*, 94 A.D.3d 959, 961 (2d Dep't 2012).

4

H. White and Trustee Jorge A. Martinez.

Hardwick was sworn in as the new Mayor on April 6, 2009. Colton, the former Deputy Village Attorney of Freeport, became the new Village Attorney. Colton did not learn until July 2009 that the Board had previously voted to provide Plaintiff with a defense in the Defamation Action. In July and August of 2009, Colton began to consider the propriety of providing Plaintiff with a defense and indemnification in the Defamation Action. No later than August 2009, Colton consulted with the New York Conference of Mayors and the New York State Comptroller's Office regarding the issue, and was informed that providing Plaintiff with a defense in the Defamation Action would be improper.

On September 3, 2009, Plaintiff sent a letter to the new Mayor, Hardwick, and the Board, criticizing a proposed settlement of the Water Works Actions. However, Plaintiff's letter had been received by Colton after he had received the opinions of the New York State Comptroller's Office and New York Conference of Mayors, and the letter did not affect Colton's opinion regarding the propriety of providing Plaintiff with a defense in the Defamation Action.[3]

On September 14, 2009, the Board voted to withdraw the defense and indemnification of Plaintiff in the Defamation Action because it had determined that Plaintiff had not been acting within the scope of his public employment or duties when he made the alleged defamatory statements about Melius at the Candidates Forum. The Board then issued a Directive and a

_____

[3] Even though Plaintiff does not dispute Hardwick's and Colton's Rule 56.1 Statement that Glacken's letter did not affect Colton's opinion regarding the propriety of providing Plaintiff with a defense in the Defamation Action, that does not mean that the actions taken by Colton and his alleged co-conspirators were not motivated, at least in part, by a retaliatory intent, as noted in the decision *infra*. Indeed, Colton could have believed that it was improper to provide Glacken with a defense and indemnification in the Defamation Action, while simultaneously acting with some degree of retaliatory intent.

corrected Directive in confirmation of its new determination to withdraw Plaintiff's defense and indemnification in the Defamation Action. Plaintiff's September 3, 2009 letter had not been discussed by the Board at the September 14, 2009 meeting.

As a result of the Board's actions, Plaintiff commenced the present action on November 5, 2009, alleging, *inter alia*, that the Board voted to withdraw the defense and indemnification of Plaintiff in the Defamation Action because Colton and Warren had "knowingly and intentionally misinformed the Board" as to the legality of funding Plaintiff's defense and indemnification. (Complaint ¶ 66.) Plaintiff also alleged that Colton and Warren had misinformed the Board regarding the Village's duty to defend and indemnify Plaintiff in the Defamation Action in retaliation for Plaintiff's having spoken out against the proposed settlement of the Water Works Action.

The Village entered into a settlement agreement with the plaintiffs in the Water Works Actions in which the Village agreed to pay $3.5 million over six years in full settlement of the plaintiffs' claims. In return, the plaintiffs in the Water Works Actions agreed to discontinue their action against the Village and the individual defendants, including Plaintiff, without requiring any admission of liability, provided the defendants signed a stipulation of discontinuance. The settlement agreement provided that the individual defendants were not required to pay any of the settlement amount. The Defendants claim that Plaintiff and certain other individual defendants in the Water Works Actions refused to sign the stipulation of discontinuance because it contained a non-disparagement clause which prohibited criticism of the Water Works Actions settlement.

On January 4, 2010, the Board voted to withdraw the defense and indemnification that it had previously provided for Plaintiff and certain other defendants in the Water Works Actions

because they had refused to sign the stipulation of discontinuance, and, thus, had failed to cooperate with the Village in obtaining a global settlement of the Water Works Actions. Plaintiff and the other defendants then commenced Article 78 proceedings in the Supreme Court of New York challenging the Board's decision to withdraw their defenses and indemnification in the Water Works Actions, arguing, *inter alia*, that the non-disparagement clause violated their First Amendment rights and constituted a prior restraint on speech.

Thereafter, on August 26, 2010, the Supreme Court denied the Article 78 petitions, finding that the petitioners had failed to cooperate with the Village as required by the Village Code and Public Officers Law, and that the petitioners' First Amendment rights had not been violated because the non-disparagement clause contained in the stipulation of discontinuance did not constitute a prior restraint on speech. The Appellate Division affirmed the Supreme Court's dismissal of the Article 78 proceedings.[4] Plaintiff continued to express his opposition to the settlement of the Water Works Action.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law

---

[4] On November 19, 2013, subsequent to filing of the instant motions, the Court of Appeals issued a decision in *Lancaster v. Inc. Vill. of Freeport*, 22 N.Y.3d 30, 41 (2013), affirming the denial of the Article 78 petitions.

in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."

*Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. *PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM*

The Village, Hardwick and Colton seek dismissal of Plaintiff's fifth cause of action, which is based upon an alleged violation of Plaintiff's procedural due process right. The Village argues that Plaintiff "was not denied procedural due process because Article 78 of the New York Civil Practice Law and Rules [("CPLR")] provided him with both an adequate pre and post deprivation remedy." (Vill.'s Mem. at 21.) Similarly, Hardwick and Colton argue that Plaintiff "should be estopped from arguing that he was deprived of a right without due process" because he failed to commence either a pre or post-deprivation Article 78 proceeding in state court. (Hardwick & Colton's Mem. at 16.)

Since Plaintiff agrees with the arguments of the Village and of Hardwick and Colton that his "due process rights were not implicated by the revocation of the defense/indemnification in the defamation suit . . . to the extent that the [Village's and Hardwick's and Colton's] argument[s] [are] predicated upon the availability of an Article 78 proceeding," (Pl.'s Mem. at 1 n.1), Plaintiff's procedural due process claim is dismissed as against the Village, Hardwick and Colton.

## III.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM

Defendants argue that Plaintiff was not entitled to a defense and indemnification in the Defamation Action because Plaintiff was not acting within the scope of his public employment at the time he made the alleged defamatory statements.  These arguments are ostensibly asserted in support of dismissal of Plaintiff's second cause of action, which alleges violations of Plaintiff's substantive due process right, as well as in support of dismissal of Plaintiff's other causes of action.[5]

"The Freeport Village Code § 130–6 adopts Public Officers Law § 18(3)(a), which provides that a 'public entity shall provide for the defense of [an] employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties.' " *Lancaster*, 22 N.Y.3d at 35.  To determine whether "the action in question 'allegedly occurred' . . . within the scope of the employee's employment, the complaint must be reviewed to ascertain whether it charges that the employee was acting within the scope of his or her employment at the time of the alleged wrongdoing."  *Merrill v. Cnty. of Broome*, 244 A.D.2d 590, 592 (3d Dep't 1997) (citing Public Officers Law § 18(3)(a); *Hassan v. Fraccola*, 851 F.2d 602 (2d Cir. 1988); *Polak v. City of Schenectady*, 181 A.D.2d 233, 236 (3d Dep't. 1992); 1995 Opns. Atty. Gen. 1010). Moreover, a public employee is entitled to a defense regardless of the complaint's allegations "if

---

[5] Although Plaintiff appears to assert allegations sounding in equal protection in the general allegations section of the Complaint, (*see* Compl. ¶¶ 91-92), and, similarly, refers to Public Officers Law § 18 throughout the complaint, he does not specifically assert any cause of action seeking relief based upon an equal protection violation or violation of Public Officers Law § 18.

an objective investigation reveals that the alleged wrongful act was committed in the course of employment." *Id.* (citing *Beare v. Byrne*, 103 A.D.2d 814, 815 (2d Dep't 1984), *aff'd*, 67 N.Y.2d 922 (1986); *Polak*, 181 A.D.2d at 236; 1995 N.Y. Op. Atty. Gen. 1010; 1992 Op. Atty. Gen. (Inf.) 1031). Further, "[t]he duty to defend is broader than the ultimate obligation to indemnify," and, therefore, "[b]efore a municipality can indemnify an employee for the cost of a judgment or settlement, the municipal attorney must evaluate whether the employee acted within the scope of his or her employment and advise the governing body." 1997 N.Y. Op. Atty. Gen. (Inf.) 1096, 1997 WL 631965, at *2 (citations omitted). "Any payment for activity outside the scope of employment would be an unconstitutional gift of public funds under Article VIII, § 1 of the State Constitution." *Id.*

In this case, a review of the complaint filed in the Defamation Action does not reveal any allegations that Plaintiff was acting within the scope of his public employment at the time he made the alleged defamatory statements. (*See* Exh. C to Willig Aff.) Thus, in order to determine whether Plaintiff was entitled to a defense and indemnification in the Defamation Action, the Court must next analyze whether, viewed objectively, there is evidence in the record that Plaintiff was acting within the scope of his official duties at the time of the alleged defamatory statements.

Under New York law, "[a]n employee's actions fall within the scope of employment where the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Beauchamp v. City of New York*, 3 A.D.3d 465, 466 (2d Dep't 2004) (citations and internal quotation marks omitted). "Conversely, where an employee's actions are taken for wholly personal reasons, which are not job related, his or her conduct cannot be said to fall within the scope of employment." *Id.* (internal

citations omitted). When determining whether an employee's acts fall within the scope of employment, the following factors may be considered:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979).

A perusal of the record discloses the absence of evidence suggesting that Plaintiff was acting within the scope of his employment at the time of his speech. Namely, it is undisputed that: Plaintiff's speech occurred while he was campaigning for re-election at a Candidates Forum held at a local library; Plaintiff was invited to the Candidates Forum strictly because he was a candidate for mayor, and he would not have been invited to participate if he had not been a candidate; the invitation to the Candidates Forum was sent to Plaintiff's campaign office; Plaintiff was not invited to similar events during the years he was not campaigning; the same questions were asked to *both* candidates for mayor; and Hardwick was asked the same question about the Water Works Actions that was asked of Glacken. (*See* Hardwick & Colton R. 56.1 Stmt. ¶¶ 4, 5; Warren R. 56.1 Stmt. ¶¶ 11, 13, 18, 19, 20, 21, 23, 24, 25, 27; Village R. 56.1 Stmt. ¶¶ 9, 10, 13, 14, 17, 18, 19, 20.)

The Court recognizes that a mayor's activities may, depending on the circumstances, fall within the scope of his employment at any time of the day and in diverse locations. For instance, had Plaintiff been asked a question as the mayor, rather than as a candidate for mayor, at the Candidates Forum or elsewhere, his response to that inquiry arguably could be viewed as an aspect of his job. But, the only evidence in the record, as previously explained, is precisely to the contrary

as a matter of law.  *See, e.g.*, *Greaney v. Ferrer*, 278 A.D.2d 154, 155 (1st Dep't 2000) (finding that a defendant's statements were not entitled to an absolute privilege when they "were made in the context of a political campaign, rather than during [the] defendant's performance of his public duties"); *Ploen v. Aetna Cas. and Sur. Co.*, 138 Misc. 2d 704, 707 (Sup. Ct. Nassau Cnty. 1988) ("[T]he process of seeking re-election is akin to searching for employment, not performing . . . duties while employed."); *Burdge v. Excelsior Ins. Co.*, 194 N.J. Super. 320, 325 (N.J. Super. Ct. App. Div. 1984) (finding that the "political activity of a candidate does not constitute a business pursuit related to the performance of [official] duties"); *see also Clark v. McGee,* 49 N.Y.2d 613, 619-20 (1980) (finding that although "the subject matter of the allegedly defamatory comments made by defendant [was] related to his public duties," the "public accusation . . . [was] not a central part of defendant's public responsibilities"); *Cheatum v. Wehle,* 5 N.Y.2d 585, 593 (1959) (defamatory "comments made in the course of an after-dinner speech to a group of citizens who can do nothing about it in any event" are not entitled to absolute privilege); *Doran v. Cohalan,* 125 A.D.2d 289, 291 (2d Dep't 1986) (finding that although "[t]he subject matter of the allegedly defamatory comments made by the [County Executive and Comptroller in a series of newspaper articles] was related to their public duties," they were "not made during the performance of an essential part of their duties").  Thus, because Plaintiff was not acting within the scope of his employment at the time of his speech, he was not entitled to a defense and indemnification in the Defamation Action.  Accordingly, Plaintiff's second cause of action alleging a substantive due process violation is dismissed.

## IV.    *PLAINTIFF'S FIRST AMENDMENT CLAIMS*

Plaintiff's third cause of action asserts that the withdrawal of his defense and

indemnification in the Defamation Action violated the First Amendment. (Compl. ¶ 108.) The arguments in the moving papers, however, are directed primarily at possible claimed First Amendment violations based upon threats to withdraw Plaintiff's defense and indemnification in the Water Works Actions, and the inclusion of a non-disparagement clause in the proposed settlement offer for the Water Works Actions.[6] (Vill.'s Mem. at 16-19; Hardwick & Colton's Mem. at 17-18.) As such, Plaintiff's claim based upon a First Amendment violation arising from the withdrawal of his defense and indemnification in the Defamation Action is largely unaddressed. The Village, Hardwick and Colton argue only that Plaintiff's First Amendment claim relating to the withdrawal of his defense and indemnification in the Defamation Action should be dismissed because Plaintiff has failed to show that the alleged retaliatory conduct silenced Plaintiff or actually chilled his speech. (Vill.'s Mem. at 16-17; Hardwick & Colton's Mem. at 17-18.) However, Plaintiff argues in opposition that his First Amendment claim pertaining to the Defamation Action should not be dismissed because he may show that he has suffered injury other than a chilling of his speech. (Pl.'s Mem. 8 n.8.) The Court agrees.

It was once well-settled law that generally a private citizen who alleged retaliation for criticism of public officials had to "prove that (1) [he] ha[d] an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of [his] First Amendment right." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). However, the Second Circuit has recently "clarified, . . . that '[c]hilled speech

---

[6] The moving papers quote paragraph 59 of the Complaint, which alleges that Defendants threatened to remove Plaintiff's defense in the Water Works Actions.

is not the *sine qua non* of a First Amendment claim.' " *Prince v. Cnty. of Nassau*, 2014 WL 1465379, at *3 (2d Cir. April 16, 2014) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)). Thus, "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.*

While Plaintiff alleges in paragraph 109 of the Complaint that he suffered harm in that he was "forced to spend money, time and resources in defending himself in [the Defamation Action]," Plaintiff has failed to come forth with any actual evidence to support that claim upon the instant motions for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial' ") (quoting Fed.R.Civ.P. 56(e)). Similarly, the mere argument in Plaintiff's opposition papers that he suffered "financial injury" by being forced to spend money and resources to defend himself in the Defamation Action, (Pl.'s Mem. at 8 n.8), does not constitute evidence to oppose summary judgment. *See Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 221 n.48 (N.D.N.Y. 2008) ("[F]actual allegations asserted in Plaintiff's opposition memorandum of law . . . are unsworn and thus do not constitute evidence for purposes of a motion for summary judgment."). Nevertheless, Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact." Therefore, in the exercise of its discretion, the Court will permit Plaintiff the opportunity to come forth with evidence to support his claim that he suffered harm by having to expend money,

time and resources to defend himself in the Defamation Action. However, if Plaintiff fails to come forth with evidence of concrete harm, his First Amendment retaliation claim against the Village, Hardwick and Colton will be dismissed.

In addition, the Court notes that Hardwick and Colton state in the facts section of their Memorandum that "[d]espite the allegations of the complaint that the Board's September 15, 2009[] directive to withdraw a defense was a direct result of the opposition to the Water Works settlement that Glacken expressed in his September 3, 2009[] letter, that clearly was not the case." According to Hardwick and Colton, Colton "saw the letter before the meeting but just put it in the file," the "letter was not discussed at the September 14th meeting," and "the inquiry into the propriety of the defense was begun long before Glacken wrote his letter." (Hardwick & Colton Mem. at 6.) However, to the extent that Hardwick's and Colton's stated facts can be viewed as an argument addressing the second element of Plaintiff's retaliation claim, i.e., that Defendants' actions were not motivated or substantially caused by Plaintiff's speech in opposition to the proposed settlement of the Water Works Actions, the Court finds that there is a triable issue of fact as to the motivations or causes of Defendants' actions in withdrawing the defense and indemnification of Plaintiff for the Defamation Action.

To begin with, in apparent contrast to Hardwick's and Colton's argument that the inquiry into the propriety of providing Plaintiff with a defense and indemnification had begun long before Plaintiff wrote his letter criticizing the proposed settlement of the Water Works Actions, and Colton's testimony that the possible revocation of Plaintiff's defense and indemnification was first discussed "[p]robably sometime in August," (Exh. N to Affirmation of Stephen F. Willig, dated June 1, 2012 ("Willig Aff.") at 44-45), the evidence reveals that when asked whether "anyone, to

[his] knowledge, discuss[ed] whether or not to revoke the resolution giving defense and indemnification to Glacken in the defamation suit prior to [Colton] seeing [Glacken's September 3, 2009] letter," Colton responded, "No." (*See id.* at 31.)

Further, Plaintiff argues that the close temporal proximity between his protected speech, i.e., his criticism of the proposed Water Works Actions settlement, and the revocation of Plaintiff's defense and indemnification in the Defamation Action, is sufficiently compelling to support an inference that the Village's, Hardwick's and Colton's actions were motivated by Plaintiff's speech. (Pl.'s Mem. at 7-8 n.7.) The Court agrees. The passage of a mere eleven (11) days between the Board's September 14, 2009 meeting, during which the Board voted to withdraw the defense and indemnification of Plaintiff in the Defamation Action, and Plaintiff's September 3, 2009 letter criticizing the proposed settlement of the Water Works Actions, sufficiently supports an inference of a causal connection. *See Nagle v. Marron*, 663 F.3d 100, 110 (2d Cir. 2011) ("A 'plaintiff can . . . establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.' " (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 262 F.3d 545, 554 (2d Cir. 2001))); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (same). Therefore, if Plaintiff comes forth with sufficient evidence to demonstrate that there is an issue fact as to whether he suffered concrete harm, his First Amendment retaliation claim pertaining to the withdrawal of his defense and indemnification for the Defamation Action will not be dismissed as against the Village, Hardwick and Colton.

On the other hand, to the extent that Plaintiff asserts First Amendment claims based upon the withdrawal of his defense and indemnification in the Water Works Actions or the inclusion of

17

a non-disparagement clause in the proposed settlement offer for the Water Works Actions, the Court agrees with the Village, Hardwick and Colton that these claims require dismissal because they were previously litigated and decided in the Article 78 proceedings brought by Plaintiff and other petitioners in state court.[7]   The New York Court of Appeals determined that: (1) the "inclusion of the nondisparagement clause in the settlement offer was not a prior restraint on speech"; (2) "the Village's 'threat' to withdraw the defense and indemnification [in the Water Works Actions was not] a prior restraint on speech"; (3) "the withdrawal of the defense and indemnification [in the Water Works Actions] was not a prior restraint on speech because it was in response to petitioners' failure to cooperate"; and (4) "there [was] no evidence that the Village retaliated against petitioners for their desire to be able to criticize the settlement" by withdrawing the defense and indemnification of petitioners in the Water Works Actions after they refused to settle.  *See Lancaster*, 22 N.Y.3d at 37-38.  Accordingly, Plaintiff is precluded from relitigating those same issues here.  *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001))); *In re Am. Tobacco Co.*, 880 F.2d 1520, 1526-27 (2d Cir. 1989) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction . . . are barred, even if based upon different theories or

---

[7] Although Plaintiff conceded that he is barred from relitigating the issue of whether the nondisparagement clause contained in the stipulation of settlement of the Water Works Actions violated his First Amendment rights, he noted that if the New York Court of Appeals reversed the Appellate Division, the issue would be revisited.  (Pl.'s Mem. at 1 n.1.)  However, since the Court of Appeals has affirmed the Appellate Division, Plaintiff is barred from relitigating the issue.

if seeking a different remedy . . . ." (citation and quotation marks omitted)).[8]

## V.     *PLAINTIFF'S CONSPIRACY CLAIM*

Warren, Hardwick and Colton seek dismissal of Plaintiff's first cause of action which alleges that they conspired "to deprive [P]laintiff of his constitutionally-protected property rights and right to free speech."  (Compl. ¶ 102.)

### A.     *Conspiracy Claim as Against Warren*

Plaintiff's conspiracy claim is brought under § 1983.  "To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law."  *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997).  Here, Plaintiff's conspiracy claim against Warren must be dismissed because Plaintiff has not established that Warren deprived him of a legally or constitutionally-protected right.  Although Plaintiff alleges that Defendants conspired to deprive him of his constitutionally-protected property rights and right to free speech, Plaintiff has failed to establish that he had a protected property interest in a defense and indemnification for either the Water Works Actions or the Defamation Action, as discussed *supra*.  In addition, the Court previously dismissed Plaintiff's First Amendment claims against Warren.  Thus, Plaintiff's § 1983 conspiracy claim against

---

[8] The Court notes that while the Court of Appeals held that the Village's alleged threat to withdraw Plaintiff's defense and indemnification in the Water Works Actions did not violate Plaintiff's First Amendment rights, and that the Village did not retaliate against Plaintiff for his criticism of the settlement by withdrawing his defense and indemnification in the Water Works Actions, the decision is silent as to whether Plaintiff asserted claims against Hardwick and Colton for violating his First Amendment rights by threatening to withdraw his defense and indemnification in the Water Works Actions or by retaliating against him for his criticism of the proposed settlement of the Water Works Actions by withdrawing his defense and indemnification in the Water Works Actions.  *See Lancaster*, 22 N.Y.3d at 37-38.  Nonetheless, Plaintiff is barred from litigating those claims now as he could have raised those claims in the Article 78 proceeding.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

Warren is dismissed.

###### B.    *Conspiracy Claim as Against Hardwick and Colton*

The Court reaches a different result with respect to Plaintiff's § 1983 conspiracy claim against Hardwick and Colton.  At the time the Court decided Warren's motion to dismiss on March 15, 2012, the typical First Amendment retaliation claim required, as noted *supra*, an allegation that the defendants' actions effectively chilled the plaintiff's exercise of his First Amendment right.  Hence, because Plaintiff had failed to plead that Defendants' conduct silenced him or in some way chilled his speech, Plaintiff's claim of retaliation under the First Amendment against Warren was dismissed.  *See Glacken*, 2012 WL 894412, at *7.  However, since the time Warren's motion to dismiss was decided, the Second Circuit has stated, as also discussed *supra*, that the third element of a plaintiff's First Amendment retaliation claim can be satisfied by proving either that his speech was silenced or chilled *or* that he has suffered some other concrete harm.  Therefore, if Plaintiff comes forth with sufficient evidence to demonstrate that there is an issue of fact as to whether he suffered concrete harm, his First Amendment retaliation claim pertaining to the withdrawal of his defense and indemnification for the Defamation Action will not be dismissed as against the Village, Hardwick and Colton, and, thus, Plaintiff will have shown that there is a triable issue as to whether there was a constitutional violation to satisfy § 1983's requirements.

In addition to showing that the defendants deprived the plaintiff of a right under color of state law, "[t]o prove a § 1983 conspiracy, [the] plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).   The Second Circuit has

"recognized that . . . 'conspiracies are by their very nature secretive operations,' and may have to

be proven by circumstantial, rather than direct, evidence."  *Id.* (quoting *Rounseville v. Zahl*, 13

F.3d 625, 632 (2d Cir. 1994)).

> Plaintiff specifically alleges that Warren, Hardwick and Colton conspired:
>
> to present to the Board of Trustees (i) a false statement relative to the Village's duty to defend [P]laintiff in the [Defamation Action]; (ii) a false statement to the Board of Trustees as to each member's individual liability for any payments on behalf of the  defense of Glacken in the [Defamation Action]; (iii) a false set of minutes concerning the Board's actions at its meeting of September 14, 2009; and (iv) did provide the Village's Claims Administrator a false "Corrected Directive" relative to the Board's actions at its September 14, 2009 Executive Session meeting.

(*Id.* ¶ 101.)   Plaintiff further claims that the above-mentioned "false guidance" given to the Board

by Warren, Hardwick and Colton, in retaliation for Plaintiff's criticism of the proposed settlement

of the Water Works Actions, "proximately resulted in the Village's revocation of the

defense/indemnification which the predecessor Board granted Plaintiff in connection with the

[Defamation Action]."  (Pl.'s Mem. at 11; *see also* Warren's Mem. at 5.)

Hardwick and Colton, on the other hand, argue that: (1) they did not "ma[ke] false

statements to the Board as to the Village's duty to defend Glacken in the Defamation Action or

the trustees' potential liability if payments were improperly made on Glacken's behalf" because

Glacken was not entitled to a defense in the Defamation Action given that he was not acting

within the scope of his public employment and duties when he made the alleged defamatory

statements (Hardwick & Colton's Mem. at 19); (2) Plaintiff's allegations that Hardwick and

Colton presented the Board with "a false set of minutes concerning the Board's actions at the

meeting of September 14, 2009," and "provide[d] the Village's Claims Administrator [with] a false 'Corrected Directive' relative to the Board's actions at its September 14, 2009 Executive Session meeting" . . . "reflect only drafting errors in the preparation of the Directive, which were corrected" (*id.*); (3) the two meetings in which Warren, Hardwick and Colton participated and "allegedly formed an 'alliance' to coordinate attacks on Glacken and . . . promptly settle the Water Works Actions" were not improper (*id.*); and (4) they did not conspire "to stifle [Plaintiff's] opposition to the settlement of the Water Works Action" because the statements they made to the Board were not false, and the inclusion of the non-disparagement clause did not violate Plaintiff's First Amendment rights or silence his speech. (*Id.* at 20.)

The gist of Hardwick's and Colton's arguments is that they did not engage in a conspiracy to deprive Plaintiff of a right because the revocation of Plaintiff's defense and indemnification for the Defamation Action was ultimately proper. However, even if Plaintiff was not legally entitled to a defense and indemnification in the Defamation Action, Defendants may still have acted with an intent to violate Plaintiff's First Amendment right. Namely, Hardwick and Colton may have advised the Board to revoke Plaintiff's defense and indemnification in the Defamation Action in retaliation for Plaintiff's exercise of his First Amendment right to speak out against the settlement of the Water Works Actions. If that is so, the fact that Hardwick's and Colton's actions in advising the Board to revoke Plaintiff's defense and indemnification in the Defamation Action were ultimately legally correct does not eradicate the extant evidence that Hardwick and Colton may have also acted in some part, if not wholly, to retaliate against Plaintiff. Here, Plaintiff has come forth with evidence to show that Hardwick, Colton and Warren had an agreement to seek the revocation of Plaintiff's defense and

indemnification in the Defamation Action, and that they committed overt acts in furtherance of, and, indeed, obtained that goal.  Thus, Plaintiff need only produce evidence that their actions were intended to cause an unconstitutional injury, i.e., that they were done in retaliation for his exercise of his First Amendment rights.  To do so, as discussed previously, Plaintiff must come forth with evidence to demonstrate that there is an issue of fact as to whether he suffered concrete harm.  If Plaintiff fails to produce this evidence, then his conspiracy claim against Hardwick and Colton pertaining to the revocation of his defense and indemnification in the Defamation Action will also be dismissed.[9]

## VI.     *HARDWICK'S AND COLTON'S OFFICIAL CAPACITY DEFENSE*

Hardwick and Colton assert that they are entitled to qualified immunity because they were acting in their official capacities when they advised the Board on the propriety of defending Plaintiff in the Defamation Action and in voting to withdraw that defense.  (Hardwick & Colton Mem. at 21.)

"42 U.S.C. § 1983 provides that '[e]very person' who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (quoting 42 U.S.C. § 1983).  Although the statute does not expressly afford official immunity, common law recognizes a qualified immunity under § 1983.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  "Under this form of immunity,

---

[9] To the extent that Plaintiff alleges a conspiracy involving Hardwick's and Colton's threat to withdraw his defense and indemnification in the Water Works Actions, the actual withdrawal of his defense and indemnification in the Water Works Actions, or the inclusion of a nondisparagement clause in the proposed settlement offer pertaining to the Water Works Action, those claims are dismissed because Plaintiff's First Amendment claims relating to the threat to withdraw his defense and indemnification in the Water Works Actions, the actual withdrawal of his defense and indemnification in the Water Works Actions, and the inclusion of a nondisparagement clause in the proposed settlement offer pertaining to the Water Works Action have been dismissed, as discussed *supra*.

government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 268 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In this case, the Court is providing Plaintiff with an opportunity to come forth with evidence to demonstrate that there is an issue of fact as to whether Hardwick and Colton violated his First Amendment right, as explained above. If Plaintiff demonstrates that there is an issue of fact as to whether Hardwick and Colton violated his First Amendment right, Hardwick and Colton will not be entitled to summary judgment on the basis of qualified immunity. However, if Plaintiff fails to come forth with evidence to support his First Amendment retaliation claim, his complaint will be dismissed in its entirety, and the issue of qualified immunity will be rendered moot in any event.

## *CONCLUSION*

For the reasons stated above, Warren's motion for summary judgment is granted, and the Village's motion for summary judgment, and Hardwick's and Colton's motion for summary judgment, are granted in part and denied in part. The Village's motion is granted as to Plaintiff's second cause of action alleging a substantive due process violation, fifth cause of action alleging a procedural due process violation, and third cause of action alleging First Amendment violations, except for Plaintiff's First Amendment retaliation claim relating to the withdrawal of his defense and indemnification in the Defamation Action. Hardwick's and Colton's motion is granted as to Plaintiff's second cause of action alleging a substantive due process violation, fifth cause of action alleging a procedural due process violation, and third cause of action alleging First Amendment violations, except for Plaintiff's First Amendment retaliation claim relating to the withdrawal of

his defense and indemnification in the Defamation Action. Hardwick's and Colton's motion is denied as to Plaintiff's first cause of action alleging a conspiracy.[10] Plaintiff is given until June 15, 2014 to come forth with evidence to support his claim that he suffered concrete harm as a result of the alleged First Amendment retaliation pertaining to the withdrawal of his defense and indemnification in the Defamation Action. If Plaintiff fails to do so, his complaint will be dismissed in its entirety as against the Village, Hardwick and Colton.

**SO ORDERED.**

Dated: Central Islip, New York
May 8, 2014
_____/s/_____
Denis R. Hurley
United States Senior District Judge

---

[10] The parties do not present any arguments regarding Plaintiff's fourth cause of action seeking injunctive and declaratory relief or sixth cause of action seeking legal fees. Nonetheless, the Court dismisses those causes of action only as against Warren since the other causes of action against Warren, which form the basis for the relief sought in the fourth and sixth causes of action, have been dismissed in their entirety.